# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00751-CV

**In the Matter of P. N.**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. J-20,482, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant P.N., a juvenile, was adjudicated as having engaged in delinquent conduct by committing the offenses of assault on a public servant, *see* Tex. Pen. Code Ann. § 22.01(b)(1) (West Supp. 2005), and retaliation, *see id.* § 36.06; *see also* Tex. Fam. Code Ann. §§ 51.03, 54.03 (West Supp. 2005). P.N. contends that the district court's judgment was erroneous because the evidence was (1) legally insufficient to establish that P.N. had the requisite *mens rea* for assault; (2) legally insufficient to establish that the allegedly-assaulted school teacher was a "public servant" as defined by the penal code, *see* Tex. Pen. Code Ann. § 1.07(a)(41) (West 2003 & Supp. 2005); (3) factually insufficient to demonstrate that the teacher was "acting within the lawful discharge of an official duty" at the time of the alleged assault, *see id.* § 22.01(b)(1); and (4) legally insufficient to establish that P.N. threatened to harm his probation officer in retaliation for the officer's actions. Because the record contains factually and legally sufficient evidence to support the district court's

determination that P.N. engaged in delinquent conduct by committing both assault and retaliation, we will affirm.

**BACKGROUND**

At the time of the offenses, P.N. was a thirteen-year-old student enrolled in the behavioral unit of the special education department at Dobie Middle School in Austin, Texas. While at school one morning in the fall of 2003, an incident occurred between P.N. and a teacher that resulted in one of the charges at issue in this appeal, assault on a public servant.

Jeffrey Dunlap testified that he was a "substitute teaching assistant . . . assigned to work with [P.N.] as a one-on-one shadow." The initial purpose of this role was to reward P.N. for completing his work; *i.e.*, to "play a game" with him and "to be his companion." But Dunlap was also assigned to "observe" P.N. and, if "any restraint [was] needed for P.N., you know, as a last resort, I would [] be the one to do it." Prior to taking on this role, Dunlap received two days' training in aggression management, wherein he was taught to use the Satori Alternative to Managing Aggression (SAMA) technique for restraint. Also present at this training class were Dobie security staff, the administrators, and "teachers that would be directly involved on a day-to-day basis with [P.N.]."

On the morning at issue, both divisions of the special education department were together in the "breakfast room"[1] at Dobie. This included P.N.'s "behavioral unit," comprised of

---

[1] Apparently, this is a classroom style facility where the students in the special education department gather for meals before classes begin.

students with behavioral problems, and the "life skills unit," comprised of mentally disabled students. Around 8:30 a.m., all members of the behavioral unit exited to go to class, except P.N., who refused. Dunlap testified that P.N. began running around, causing Dunlap to worry that P.N. would knock over one of the life-skills students, who were "not physically adept" to protect themselves. Dunlap attempted "to corral P.N. . . . trying to separate him and get him out of the [breakfast room]." P.N. continued running around the room with his arms and fists "flailing" and making "verbal outbursts." At one point, Dunlap observed that two of the life-skills students were "within [P.N.'s] immediate vicinity," and Dunlap "thought [they] would be struck by [P.N.'s] fists. And so that's when [Dunlap] placed [P.N.] in a restraint." At this point in Dunlap's testimony, the prosecutor asked Dunlap to demonstrate how P.N. was behaving, and the district court described for the record that the demonstrated "movements were violent, rapid. He ran some ten feet, swerving, gesticulating wildly. The Court was frightened during the demonstration as he approached and went back into the area where the audience was and as he almost knocked down the easel."[2]

Dunlap described the restraint he used on P.N. as a "bear hug . . . which consisted of both his arms crossed, with my hands grabbing on to his hands." Dunlap's intention was to get P.N. out of the breakfast room and into a "cool-down room." He was able to get P.N. to the hallway and, as Dunlap was about to open the classroom door, P.N.'s "legs reared up, and he kicked off—off the wall," causing both Dunlap and P.N. to go "hurling backwards." Dunlap testified that P.N.'s action

---

[2] The court also stated that it "found Mr. Dunlap to be very credible as a witness, both in his physical demonstrations as well as in his testimony."

caused him to be "knocked off balance" and fall to the ground. As a result, Dunlap sustained a "sprained ankle with a possible hairline fracture, along with several bruised vertebrae."

On cross-examination, Dunlap testified that he was trained to use restraint only "if there was anybody in direct physical jeopardy . . . or if there is a possibility of any property damage occurring." When asked whether this meant that he was "not to use force unless there was a threat of imminent, serious, physical harm," Dunlap responded, "I would have to look at the exact wording of the law, but I would assume that's accurate."

Officer Craig Rigtrup with the Austin Independent School District Police testified that he interviewed Dunlap twenty minutes after this incident. According to Rigtrup's report, Dunlap had described P.N. as being "disruptive" and "up and about the room, wouldn't be quiet, . . . making inappropriate comments to female students," and exhibiting "unruly behavior," which was "escalating." Rigtrup's report further reflected that P.N. resisted Dunlap's initial efforts to get him out of the room. In so doing, "P.N. began to slightly push against Dunlap. Dunlap then applied a lawful, policy-approved restraint, to wit: a bear hug." But, as highlighted on cross-examination, Rigtrup's report contained no indication of Dunlap stating that P.N. had physically threatened or harmed other students or that Dunlap, the teachers, or the students "were in fear or danger of any physical harm." When asked whether or not Rigtrup believed P.N.'s behavior constituted "an assault on a public servant," Rigtrup responded, "I felt like it was."

Following this incident between P.N. and Dunlap, a detention hearing was held at which the court ordered that P.N. be removed from his grandmother's custody and placed in the care of the Juvenile Justice Center at the Gardner-Betts Juvenile Detention Facility. While there, P.N.'s

4

probation officer, Creschenda Shuler, came to his dorm room to "check on his well being." Shuler testified that part of her job as P.N.'s probation officer was to "make a recommendation about disposition on his case" and "come into court and testify as to what the Department's recommendation is for him." Shuler testified that P.N. knew these functions were part of her job. Shuler further testified that, when she met with P.N. in his dorm room, they began discussing some of his behavioral problems and what "the consequences [could be] of his continued negative behavior." At that point, P.N. told Shuler "that if [she] sent him to the Texas Youth Commission, that when he went and came back, that he would be waiting in the parking lot to shoot [her]." Shuler testified that she "didn't take him seriously" and she "was not in fear."

The State filed a petition against P.N. alleging that he had engaged in delinquent conduct by committing the offenses of assault on a public servant and retaliation, as well as four other allegations not at-issue in this appeal. Adjudication and disposition hearings were held before an associate judge, at which the State called four witnesses (including Dunlap, Rigtrup, and Shuler), and appellant offered no evidence. The associate judge determined the assault on a public servant and retaliation charges to be true beyond a reasonable doubt and, accordingly, recommended that P.N. be committed to the Texas Youth Commission. The district judge signed a final judgment of delinquency and order of commitment adopting this recommendation October 18, 2004, from which P.N. now appeals.

In four issues, P.N. attacks the factual and legal sufficiency of the evidence to support the judgment regarding assault on a public servant and the legal sufficiency of the evidence to support the judgment regarding retaliation. We will address each in turn.

**ANALYSIS**

**Factual and Legal Sufficiency**

We review adjudications of delinquent conduct in juvenile proceedings under the same standard of review we employ to review the sufficiency of the evidence supporting a jury's verdict in a criminal case. *See In re L.M.*, 993 S.W.2d 276, 284 (Tex. App.—Austin 1999, pet. denied); *see also In re B.M.*, 1 S.W.3d 204, 206 (Tex. App.—Tyler 1999, no pet.). The State must prove beyond a reasonable doubt that the juvenile committed an offense, thus engaging in delinquent conduct. Tex. Fam. Code Ann. §§ 51.03, 54.03(f).

To evaluate the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether from that evidence any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003); *In re L.M.*, 993 S.W.2d at 284; *see also* Tex. Fam. Code Ann. § 54.03(f). The trier of fact is entitled to resolve any conflicts in the evidence, to evaluate the credibility of witnesses, and to determine the weight to be given any particular evidence. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). The standard of review is the same for both direct and circumstantial evidence. *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence in a neutral light and determine whether the fact-finder was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). Evidence may be found factually insufficient when the evidence supporting the verdict, considered

6

alone, is too weak to support the finding of guilt beyond a reasonable doubt, or when the evidence contrary to the verdict is so strong that the standard of beyond a reasonable doubt could not have been met. *Johnson v. State*, 172 S.W.3d 6, 10 (Tex. App.—Austin 2005, pet. ref'd). In a juvenile case, if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, we set aside the disposition order and remand the case for a new disposition hearing. *In re C.C.*, 13 S.W.3d 854, 859 (Tex. App.—Austin 2000, no pet.).

**Assault on a Public Servant**

In relevant part, penal code section 22.01 provides that "a person commits an offense if the person . . . intentionally, knowingly, or recklessly causes bodily injury to another," which constitutes "a felony of the third degree if the offense is committed against . . . a person the actor knows is a public servant while the public servant is lawfully discharging an official duty." Tex. Pen. Code Ann. § 22.01(a)(1), (b)(1). P.N. contends that the district court erroneously determined that he committed this offense because the evidence was legally insufficient to establish the requisite *mens rea* or to establish that Dunlap was a "public servant," and was factually insufficient to establish that Dunlap was "lawfully discharging an official duty." *See id*.

*Mens rea*

Section 22.01 requires the State to prove beyond a reasonable doubt that the assault was committed either intentionally, knowingly, or recklessly. *Id*. The State is only required to prove one of these mental states, not all three. Here, through its petition, the State limited its case to the first two—intentionally or knowingly. Thus, as long as the evidence was legally sufficient to

7

establish, at a minimum, that P.N.'s actions were knowing, then we need not reverse the judgment on this point.

For a result-oriented offense such as assault, "a person acts knowingly . . . when he is aware that his conduct is reasonably certain to cause the result." *Id*. § 6.03(b) (West 2003); *Kelly v. State*, 748 S.W.2d 236, 239 (Tex. Crim. App. 1988). Hence, the inquiry here is whether P.N. was aware that, while being held from behind by Dunlap, rearing his legs up and pushing off the wall would likely result in Dunlap falling. "Proof of a culpable mental state almost invariably depends upon circumstantial evidence. Ordinarily, the culpable mental state must be inferred from the acts of the accused or the surrounding circumstances, which include not only acts, but words and conduct." *Lee v. State*, 21 S.W.3d 532, 539-40 (Tex. App.—Tyler 2000, pet. ref'd) (citations omitted); *see also Skillern v. State*, 890 S.W.2d 849, 880 (Tex. App.—Austin 1994, pet. ref'd).

The undisputed evidence in this case reflects that P.N. was attempting to break free from Dunlap, and it is reasonable to infer that, as a means of achieving this result, P.N. knowingly engaged in the disputed conduct with reasonable awareness that it would knock Dunlap down. *See Lee*, 21 S.W.3d at 349-50. Also, Officer Rigtrup testified that, given "all [his] years of experience," based on these circumstances, he would classify P.N.'s behavior as "an assault on a public servant." Viewing the evidence in the light most favorable to the judgment, we determine that the district court, as the trier of fact in this case, could rationally determine beyond a reasonable doubt that P.N. was aware that the probable result of his actions—rearing up his legs and pushing off the wall—would be for Dunlap to lose his balance and fall, thereby sustaining a bodily injury. *See Brooks v. State*, 967 S.W.2d 946, 948-49 (Tex. App.—Austin 1998, no pet.) (in assault on public

8

servant case, despite appellant's testimony that she accidently hit officer in attempt to flee his restraint, rational trier of fact could infer that appellant swung with knowledge that injury was likely to occur); *In re J.L.O.*, No. 03-01-00632-CV, 2002 Tex. App. LEXIS 5730, at *3, *8 (Tex. App.—Austin Aug. 8, 2002, no pet.) (evidence sufficient to determine that student assaulted public servant, education assistant, where student caused assistant bodily injury by attempting to break free from her disciplinary restraint, causing assistant to fall backwards to floor).

P.N.'s first issue is overruled.

### *Public servant*

The penal code defines "public servant," in relevant part, as "a person . . . employed [as] . . . an officer, employee, or agent of the government." Tex. Pen. Code Ann. § 1.07(a)(41)(A). P.N. argues that Dunlap, as a public school teacher, did not satisfy this definition. P.N. bases this argument on the fact that, in the current penal code, school teachers are not explicitly named as "public servants," whereas a prior version of section 22.01(b) had named them as such.

Because this Court and other courts have expressly resolved this issue—holding that public school teachers fall within the broad definition of "public servant" provided by the current version of section 1.07(a)(41)(A)—P.N.'s argument is without merit. *See In re J.P.*, 136 S.W.3d 629, 630 (Tex. 2005) (noting that juvenile committed assault on public servant per section 22.01(b)(1) by hitting and kicking public school teacher); *Moore v. State*, 143 S.W.3d 305, 311 (Tex. App.—Waco 2005, pet. ref'd) (school superintendent was "public servant" under section 1.07(a)(41)(A)); *In re F.C.*, No. 03-02-00463-CV, 2003 Tex. App. LEXIS 4709, at *10-11 (Tex. App.—Austin June 5, 2005, no pet.) (teacher at Dobie Middle School was "public servant" for

purposes of section 22.01(b)(1)); *In re J.L.O.*, 2002 Tex. App. LEXIS 5730, at *8-9 & n.1 (education assistant at public school satisfied penal code definition, which legislature intentionally made broad "to extend the law's protection to all school employees"); *In re B.M.*, 1 S.W.3d at 207 ("[p]ublic servants, as defined in the penal code, include employees of independent school districts"). Accordingly, Dunlap's undisputed testimony that he was a "substitute teaching assistant" employed by the Austin Independent School District at Dobie Middle School provided legally sufficient evidence to establish this element of the offense. *See In re L.M.*, 993 S.W.2d at 284.[3]

P.N.'s second issue is overruled.

### *Lawful discharge of official duty*

For an offense under section 22.01(b)(1) to constitute a felony, the assault must be committed against a public servant "while the public servant is lawfully discharging an official duty." Tex. Pen. Code Ann. § 22.01(b)(1). P.N. claims that the evidence is factually insufficient to establish this element because Dunlap was acting in excess of his lawful authority by holding P.N. in a "bear hug" restraint. We disagree.

Dunlap testified that part of his job function was to physically restrain P.N. if necessary and that the school district provided him, as well as other employees who would be working with P.N., specialized training about how to exercise such force; namely, using the SAMA "bear hug" technique for restraint. Dunlap further testified that, pursuant to his training, he was

---

[3] P.N. does not dispute that he was aware that Dunlap was employed as his teacher. *See* Tex. Pen. Code Ann. § 22.01 (b)(1) (West Supp. 2005) (requirement that actor know person assaulted is public servant).

10

authorized to use restraint "if there was anybody in direct physical jeopardy . . . or if there is a possibility of any property damage occurring." Regarding the incident at issue, Dunlap stated that, after non-physical attempts to remove P.N. were unsuccessful, the use of restraint became necessary when two of the life-skills students were "within [P.N.'s] immediate vicinity," and Dunlap "thought [they] would be struck by [P.N.'s] fists." Dunlap's demonstration of P.N.'s behavior satisfied the district court that P.N.'s "movements were violent, rapid" and "frighten[ing]," and included running and "swerving, gesticulating wildly."

Even taking as true that Dunlap was authorized to use restraint only when "there was a threat of imminent, serious, physical harm," the above evidence satisfies this criteria. Just because Officer Rigtrup's report did not expressly include a statement by Dunlap that teachers or students were physically threatened or in fear of harm by P.N. does not disprove the existence of imminent harm that Dunlap testified about. Furthermore, Rigtrup's report noted that P.N. was engaging in "unruly behavior" that was "escalating." And based on the account Dunlap provided him, Rigtrup's report described Dunlap's action as "a lawful, policy-approved restraint, to wit: a bear hug." *See In re J.L.O.*, 2002 Tex. App. LEXIS 5730, at *10 (teacher lawfully discharging official duty when physically restraining student whose behavior was "unruly and potentially threatening," where non-physical attempts to defuse situation had been unsuccessful, because "teachers must have the authority to establish rules and maintain discipline within their classrooms").[4]

---

[4] *See also Johnson v. State*, 172 S.W.3d 6, 11 (Tex. App.—Austin 2005, pet. ref'd) (in context of police officer, "lawful discharge" of official duties means "officer is acting within his capacity as a peace officer" and "is not criminally or tortiously abusing his office as a public servant").

Considering all the evidence presented on this issue, which consisted of only Dunlap's and Rigtrup's testimony, we conclude that the district court, as the fact-finder in this case, was rationally justified in determining that Dunlap was "lawfully discharging an official duty" at the time P.N. assaulted him. *See Zuniga*, 144 S.W.3d at 484; *see also* Tex. Pen. Code Ann. § 22.01 (b)(1). This finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *See In re C.C.*, 13 S.W.3d at 859 (Tex. App.—Austin 2000, no pet.). Rather, the finding was supported by factually sufficient evidence.

P.N.'s third issue is overruled.

**Retaliation**

In relevant part, section 36.06 of the penal code provides that a "person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act: (1) in retaliation for or on account of the service or status of another as a (A) public servant, witness, prospective witness, or informant." Tex. Pen. Code Ann. § 36.06(a)(1)(A). "A central purpose of the statute is to encourage a certain class of citizens to perform vital public duties without fear of retribution." *Doyle v. State*, 661 S.W.2d 726, 729 (Tex. Crim. App. 1983).

P.N. argues that the evidence was legally insufficient to establish this offense because Shuler testified that she did not take P.N.'s threat seriously nor have fear based on it. P.N.'s argument is without merit, however, because the statute does not require any subjective reaction by the victim of the retaliation. *See* Tex. Pen. Code Ann. § 36.06(a)(1)(A); *see also In re B.M.*, 1 S.W.3d at 207 (statute does not require threatened harm be imminent or actually intended).

Instead, the only required elements of the offense pertain to understandings of and actions taken by the appellant, and each of those elements is satisfied in this case. First, it is undisputed that P.N. told Shuler that, "if [she] sent him to the Texas Youth Commission, that when he went and came back, that he would be waiting in the parking lot to shoot [her]." Thus, P.N. threatened to harm Shuler by an unlawful act. Second, it is undisputed that Shuler, as a probation officer, is a public servant[5]; that P.N. made this threat in the context of a conversation about the "consequences" of his negative behavior; and that P.N. was aware that part of Shuler's duty as a public servant would be to testify at P.N.'s disposition hearing about the Department's recommendation for whether or not P.N. should be committed to the Texas Youth Commission. Thus, P.N.'s threat was made in retaliation for or on account of the service Shuler would provide as a public servant and/or a potential witness.[6] This is all the statute requires. *See id.*

Accordingly, Shuler's undisputed testimony provided legally sufficient evidence for the district court to determine that P.N. had committed the offense of retaliation. *See In re B.M.*, 1 S.W.3d at 207-08 (student's threat to teacher that "I'll just get my gun [and] . . . shoot you" satisfied elements of section 36.06); *Webb v. State*, 991 S.W.2d 408, 412, 417 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (evidence sufficient to establish retaliation where appellant threatened family counselor regarding her potential CPS report and accompanying testimony that, "you better not, if you do I'm going to start an all out war with you and you'll be sorry").

P.N.'s fourth issue is overruled.

---

[5] Shuler was employed by the Travis County Juvenile Probation Department.

[6] Because part of Shuler's duty was to serve as a potential witness, both categories are satisfied in this case.

**CONCLUSION**

Having overruled each of P.N.'s four issues, we affirm the district court's judgment.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   August 4, 2006